

ROCKINGHAM, SS                                    JURY TRIAL DEMANDED
SUPERIOR COURT

Exeter Hospital, Inc.

v.

David Kwiatkowski
Maxim Healthcare Services, Inc.
The American Registry of Radiological Technologists
American HealthCare Services Association, LLC
Triage Staffing, Inc.

# CIVIL COMPLAINT

## THE PARTIES

**PLAINTIFF:**

1.  Plaintiff Exeter Hospital, Inc. (hereinafter referred to as "Exeter Hospital") is a New Hampshire corporation, having a principal place of business of 5 Alumni Drive, Exeter, NH, 03833.

**DEFENDANTS:**

2.  David Kwiatkowski (hereinafter referred to as "Kwiatkowski") is a natural person who is domiciled within the State of New Hampshire, having a residential address of Strafford County Jail, 259 County Farm Road, Dover, New Hampshire 03820.

3.  Maxim Healthcare Services, Inc. d/b/a Maxim Staffing Solutions (hereinafter referred to as "Maxim") is a Maryland corporation, having a principal place of business located at 7227 Lee DeForest Drive, Columbia, MD 21046. Upon information and belief, it has an

1

office at 1750 Elm St., Suite 602, Manchester, NH 03104 and is registered to do business in NH.

4.  The American Registry of Radiologic Technologists d/b/a ARRT (hereinafter referred to as "ARRT") is a Minnesota non-profit corporation, having a principal place of business located at 3588 Juten Drive, Duluth, MN 55803.

5.  American HealthCare Services Association, LLC (hereinafter referred to as "AHSA") is a Michigan limited liability company, having a principal place of business of located at 10126 E. Cherry Bend Road, Traverse City, MI 49684.

6.  Triage Staffing, Inc. (hereinafter referred to as "Triage") is a Nebraska corporation, having a principal place of business of located at 11133 O Street, Omaha, NE 68137.

## JURISDICTION AND VENUE

7.  The New Hampshire Superior Court has subject matter over this litigation, pursuant to RSA 491:7 and RSA 507:7-g.

8.  Personal jurisdiction over the resident defendant is obtained through RSA 510:2.

9.  Personal jurisdiction over each of the nonresident defendants is obtained through RSA 510:4.

10. Exeter Hospital is domiciled within Rockingham County, and consequently, venue in the Rockingham County Superior Court is proper, pursuant to RSA 507:9.

## ALLEGATIONS COMMON TO ALL COUNTS

11. This contribution and indemnification action arises out of the Hepatitis-C outbreak that occurred at Exeter Hospital.

2

12. In May 2012, Exeter Hospital became aware that three of its former patients had been diagnosed with Hepatitis-C.

13. Due to common elements in their clinical histories, Exeter Hospital reported the cases to the New Hampshire Department of Health and Human Services Division of Public Health Services (hereinafter referred to as "DPHS").

14. Testing performed by the DPHS confirmed that all three of those cases shared an identical strain of Hepatitis-C, indicating that the patients had a common source of infection.

15. The connection among the infected individuals appeared to involve the Exeter Hospital's Cardiac Catheterization Lab (hereinafter referred to as "the Cath Lab").

16. Subsequently, a Cath Lab technician, defendant Kwiatkowski, was determined to be infected with the same Hepatitis-C strain as that found in the three Cath Lab patients, and as a result, he was identified as being the potential source of the patient infections.

17. Kwiatkowski was immediately placed on leave and was later terminated.

18. During the investigation, Exeter Hospital and the DPHS attempted to contact all patients who had received care in the Cath Lab and other designated areas of the hospital, and recommended that they undergo testing for the Hepatitis-C virus.  As result of that effort, more than 3,000 patients were tested.

19. Of the patients who underwent testing, a total of thirty-two tested positive for the same strain of the Hepatitis-C virus associated with Kwiatkowski.

20. In June 2013, a thirty-third individual reportedly tested positive for Kwiatkowski's Hepatitis C strain which the individual contracted through contact with one of the Exeter Hospital patients infected by Kwiatkowski.

21.  Kwiatkowski was arrested on or about 19 July 2012 and charged with multiple federal felonies including: (1) acquiring controlled drugs by misrepresentation, fraud, forgery, deception or subterfuge; and (2) tampering with a consumer product and the container for such product that affected interstate and foreign commerce with reckless disregard for the risk that another person will be placed in danger of death or bodily injury and under circumstances manifesting extreme indifference to such risk, resulting in serious bodily injury to another individual.

22.  On 28 November 2012, a federal grand jury indicted Kwiatkowski on seven counts each of fraudulently obtaining controlled drugs, and tampering with a consumer product.

23.  According to federal criminal charges filed against him, Kwiatkowski surreptitiously stole syringes containing narcotic medications, including fentanyl, that were intended for hospital patients. The stolen narcotic-filled syringes and were replaced with saline-filled syringes that Kwiatkowski had previously used to inject himself, and which were contaminated with his blood.

24.  Kwiatkowski engaged in this pattern of illegal drug diversion and use over a period of years, at numerous hospitals across the country, even though he knew he was infected with Hepatitis-C.

25.  Law enforcement officials have described Kwiatkowski as a "serial infector" who acted with "extreme indifference" for public safety.

26.  As a nationally registered traveling technician, Kwiatkowski worked at an estimated nineteen hospitals in eight states between 2003 and 2012, where he potentially could have infected thousands of patients with Hepatitis-C.

27.   Between 2003 and 2007, Kwiatkowski was terminated and/or resigned from four Michigan health facilities.  Three of these terminations and/or resignations were related to investigations about or findings of controlled drug use.

28.   In 2004, Kwiatkowski resigned from St. Joseph Mercy Health System after he was questioned about a toilet that was overflowing with syringes.  He admitted a co-worker was leaving syringes of Dilaudid for him in empty rooms which he was using, and he tested positive for controlled substances.

29.   Thereafter, also in 2004, Kwiatkowski was terminated from William Beaumont Hospital for "gross misconduct."

30.   In 2006, Kwiatkowski resigned from the University of Michigan Hospital after being suspended in the midst of an investigation related to missing controlled substances, including fentanyl.  During the investigation Mr. Kwiatkowski was questioned in connection with three incidents of vials or syringes of Fentanyl being stolen on September 21, October 10, and December 7, 2006.  In 2007, Kwiatkowski resigned from Oakwood Annapolis Hospital after he was suspended pending an investigation regarding potential controlled substance use.

31.   Between 2007 and 2011, Kwiatkowski accepted positions at health facilities in New York, Pennsylvania, Maryland, Arizona, Kansas, Georgia, and New Hampshire.

32.   In 2008, Kwiatkowski was terminated from the University of Pittsburgh Medical Center Presbyterian Shadyside (hereinafter referred to as "UPMC") after another employee witnessed Kwiatkowski remove a syringe of fentanyl from an operating room.  During a search, three (3) empty Fentanyl syringes were found on David Kwiatkowski and an empty morphine syringe was found in his locker.

33.  David Kwiatkowski was seen in the Emergency Department where a comprehensive drug screen was ordered which confirmed the presence of Fentanyl and Opiates. Subsequent testing of a syringe from the procedure room where Kwiatkowski was observed stealing a syringe confirmed that Kwiatkowski had replaced the syringe of fentanyl with a syringe containing another fluid.

34.  Less than two weeks after being terminated by UPMC, Kwiatkowski accepted a position at the Baltimore Veterans Affairs Medical Center (hereinafter referred to as "VA Medical Center").

35.  To date, in addition to the thirty-three Exeter Hospital patients and additional individuals who have tested positive for Hepatitis-C and been linked to Kwiatkowski, fourteen patients in four states reportedly have been diagnosed with the same Hepatitis C strain. One patient at UPMC has been diagnosed with a matching strain.  Additionally, one patient at the VA Medical Center has been diagnosed with Hepatitis C linked to Kwiatkowski. Six patients at The Johns Hopkins Hospital in Baltimore, where Kwiatkowski worked in 2009 and 2010, have also been diagnosed with the relevant strain of Hepatitis C. Six patients who were treated at Hays Medical Center in Kansas, where Kwiatkowski worked in 2010 have also tested positive for Hepatitis-C linked to Kwiatkowski.

36.  Medical records obtained by the U.S. Attorney's Office as part of the criminal investigation indicate that Kwiatkowski tested positive for Hepatitis-C in June of 2010.

37.  Despite knowing he had Hepatitis-C, Kwiatkowski continued to expose hospital patients to the potential risk of contracting the virus for years before Triage recommended him for employment at Exeter Hospital.

38. Kwiatkowski has a history of telling false stories about himself to employees at the hospitals where he has worked.  For example, Kwiatkowski frequently claimed to have played baseball at the University of Michigan and that his fiancée died under tragic circumstances.  A supervisor from a hospital in another state indicated that Kwiatkowski was terminated for falsifying timesheet information.

39. Multiple witnesses have stated that Kwiatkowski told them he suffered from cancer, which cannot be corroborated by any medical documentation.   When police interviewed him in July of 2012, he admitted he had "fabricated his life."   When asked how patients at Exeter Hospital may have contracted Hepatitis-C, Kwiatkowski told the police, "You know, I'm more concerned about myself, my own well-being.  I've learned here to just worry about myself, and that's all I really care about now."

40. On 14 August 2013 Kwiatkowski appeared in the United States District Court for the District of New Hampshire and, as part of a plea agreement reached with the United States Attorneys for the Districts of New Hampshire, Kansas, Maryland and the Middle District of Georgia, Kwiatkowski admitted to his criminal conduct and pleaded guilty to all 14 counts of the Indictment, as well as one count of tampering with a consumer product and one count of obtaining controlled substances by fraud for events occurring in the District of Kansas. He is presently awaiting sentencing.

41. At all times relevant to this litigation, Kwiatkowski had a duty to exercise reasonable care to prevent the patients with whom he came into contact, including the patients of Exeter Hospital, from contracting the Hepatitis-C virus, of which he was a carrier.

42. In total disregard of the aforesaid duty, Kwiatkowski negligently infected thirty-two (32) Exeter Hospital patients with the Hepatitis-C virus.

43. Prior to the time that Kwiatkowski came to work at Exeter Hospital, he had been fired from at least four different hospitals..

44. Although UPMC immediately terminated him in 2008, Kwiatkowski remained employed as a traveling cardiac catheterization technician, thereby foreseeably placing at risk the patients at any hospital in the country to which Kwiatkowski might travel, including those at Exeter Hospital.

45. Defendant Maxim is a temporary hospital staffing agency and was responsible for placing Kwiatkowski at UPMC.

46. Maxim was notified of the UPMC termination, but failed to report Kwiatkowski to any law enforcement agency or licensing authority.

47. Recognizing the obvious importance of making such a report, Maxim created and back-dated an e-mail message suggesting that it had reported Kwiatkowski's conduct to the Maryland Board of Physicians in 2009.

48. Maxim has subsequently admitted (through counsel) to the Maryland Attorney General's Office that the e-mail message was a fabrication.

49. Maxim's inaction enabled Kwiatkowski to remain employed as a traveling cardiac catheterization technician, thereby foreseeably placing at risk the patients at any hospital in the country to which Kwiatkowski might travel, including those at Exeter Hospital.

50. Despite his recent termination from UPMC, Maxim placed Mr. Kwiatkowski in a position at Southern Maryland Hospital in November 2008. He was terminated in February 2009 for falsifying and forging his supervisor's signature on his time records.

51. In July 2009, the staffing agency, Medical Solutions, placed Mr. Kwiatkowski in a position at Johns Hopkins Hospital. After Johns Hopkins extended an offer of permanent

employment to Mr. Kwiatkowski the offer was revoked shortly after two incidents in which vials of Fentanyl went missing from the department where Kwiatkowski worked.

52.   In March of 2010, while working at the Arizona Heart Hospital in Phoenix, Arizona, Kwiatkowski was reportedly found semi-conscious in a restroom stall.  The co-employee who discovered him observed a fentanyl syringe floating in the toilet.

53.   Kwiatkowski admitted to an Arizona Heart Hospital employee that he had taken a syringe filled with fentanyl and injected himself.

54.   A drug test was administered and detected the presence of marijuana and cocaine in Kwiatkowski's system.   The drug test administered did not specifically screen for fentanyl.

55.   After failing the drug test, Kwiatkowski was terminated immediately by the hospital.

56.   The temporary medical staffing agency that had placed Kwiatkowski at Arizona Heart Hospital, SpringBoard, Inc., also terminated Kwiatkowski's employment, and notified defendant ARRT of the circumstances of Kwiatkowski's termination.

57.   Although ARRT had actual notice of the Arizona Heart Hospital termination, ARRT took no meaningful action to investigate the incident and/or revoke Kwiatkowski's national certification.

58.   As the operator of a national registry of radiological technicians, ARRT had the ability to investigate, suspend or revoke Kwiatkowski's national certification.

59.   ARRT did not act on Arizona Heart Hospital's report of Kwiatkowski's misconduct, but instead, continued to maintain his ARRT certification.

60.     ARRT's inaction enabled Kwiatkowski to remain employed as a traveling cardiac catheterization technician, thereby foreseeably placing at risk the patients at any hospital in the country to which Kwiatkowski might travel, including those at Exeter Hospital.

61.     The staffing agency, Medical Solutions, placed Mr. Kwiatkowski at Hays Medical Center in Kansas in May, 2010.  He was terminated on September 22, 2010 after being caught falsifying his time sheets and forging the signature of his supervisor.

62.     Like hundreds of health care facilities around the country, Exeter Hospital relies on third-party staffing agencies to identify and screen potential medical personnel to fill short-term staffing vacancies.

63.     Exeter Hospital is a member of defendant AHSA, which contracts with various agencies to provide temporary staffing services to its member hospitals.

64.     Exeter Hospital's reliance on AHSA to contract with competent staffing agencies, and on Triage to properly screen Kwiatkowski was consistent with national standards for proper hospital operations and was entirely reasonable.

65.     Prior to Kwiatkowski's arrival at Exeter Hospital, AHSA had entered into a staffing agreement with defendant Triage for Triage to provide temporary staffing to its member hospitals.

66.     At all times relevant to this litigation, AHSA owed a duty to Exeter Hospital to exercise reasonable care to monitor Triage, to ensure that Triage and their staff remained in compliance with the terms of the staffing agreement, and to ensure that Triage and their staff conformed to internal and third-party quality assurance standards to which Triage claimed it adhered.

67.   In total disregard of its duty, AHSA failed to properly monitor the performance and compliance of Triage.

68.   ASHA's conduct was in violation of RSA Chapter 358-A, the New Hampshire Consumer Protection Act, in that ASHA represented that its services were of a particular standard, quality and grade, when in fact, they were of another.  See RSA 358-A:2.

69.   ASHA's conduct was in violation of its common law implied duty to act in good faith throughout the performance of its contractual obligations to Exeter Hospital.

70.   AHSA's conduct foreseeably placed at risk the patients at any hospital in the country to which Kwiatkowski might travel, including those at Exeter Hospital.

71.   The aforesaid breach of duty by AHSA resulted in Kwiatkowski being placed at Exeter Hospital, notwithstanding the fact that he was addicted to opioids; was infected with Hepatitis-C; and had resigned from or been terminated by at least four prior hospital positions as a direct result of his in-hospital drug-related misconduct.

72.   Pursuant to the AHSA staffing agreement, Kwiatkowski was referred to Exeter Hospital by Triage, and began work on or about 11 April 2011.  He became a permanent employee of Exeter Hospital on 17 October 2011.

73.   Triage advertises itself as "a company you can trust" with "over 25 years of staffing experience."  Triage represents that its "goal is to provide your facility with a healthcare professional whose personality and technical abilities match the needs of your department.  Our healthcare professionals carry all the necessary licensures, insurance and certifications necessary, and will meet any and all hospital and JCAHO protocols."

74.   Triage further represents that it "provides recruiting, screening, verification and assessment for "best fit" personalities.   [Triage] adheres to a strict process of

interviewing, establishing credibility, and assuring competency before placing [its] healthcare professionals.  Each Triage employee is drug tested and has a background check completed to give [Triage's clients] complete peace of mind."

75.   Triage had obtained the Joint Commission's Health Care Staffing Certification. This certification "assures customers, staff and other stakeholders that [a] staffing agency is fully meeting the health care quality and safety needs for which [a staffing agency] is responsible."

76.   Triage failed to meet its contractual obligations to the AHSA; failed to meet its own published standards; failed to meet the standards imposed by the JCAHO; and failed to meet the guarantees that it provided Exeter Hospital by recommending Kwiatkowski for a temporary staff position in Exeter Hospital's Cardiac Cath Lab.

77.   Triage's conduct was in violation of RSA Chapter 358-A, the New Hampshire Consumer Protection Act, in that Triage represented that its services were of a particular standard, quality and grade, when in fact, they were of another.  See RSA 358-A:2.

78.   Triage's conduct was in violation of its common law implied duty to act in good faith throughout the performance of its contractual obligations to Exeter Hospital.

79.   Triage's conduct foreseeably placed at risk the patients at any hospital in the country to which Kwiatkowski might travel, including those at Exeter Hospital.

80.   The aforesaid breaches by Triage resulted in Kwiatkowski being placed at Exeter Hospital, notwithstanding the fact that he was addicted to opioids; was infected with Hepatitis-C; and had resigned from or been terminated from at least  four prior hospital positions as a direct result of his drug-related misconduct.

81. Prior to the time that Kwiatkowski arrived at Exeter Hospital, each of the defendants knew, or through the exercise of reasonable care, should have known, that Kwiatkowski was unfit for continued employment as a traveling cardiac catheterization technician.

82. Prior to the time that Kwiatkowski arrived at Exeter Hospital, each of the defendants knew, or through the exercise of reasonable care, should have known, that allowing Kwiatkowski to continue working as a traveling cardiac catheterization technician would foreseeably place at extreme risk any patient who came under his care.

83. Each of the defendants owed a duty to exercise reasonable care to properly screen, test, monitor and supervise Kwiatkowski in his capacity as a traveling cardiac catheterization technician.

84. Each of the defendants owed a duty to exercise reasonable care to fully investigate and report to the appropriate authorities Kwiatkowski's illegal drug diversion and use.

85. Each of the defendants owed a duty to immediately and permanently prevent Kwiatkowski from continuing his employment as a traveling cardiac catheterization technician.

86. In complete disregard of the aforesaid duties, the defendants failed and neglected to discharge their duty to properly screen, test, monitor and supervise Kwiatkowski.

87. In complete disregard of the aforesaid duties, the defendants failed and neglected to discharge their duty to fully investigate and report to the appropriate authorities Kwiatkowski's illegal drug diversion and use.

88. In complete disregard of the aforesaid duties, the defendants failed and neglected to discharge their duty to immediately and permanently prevent Kwiatkowski from continuing his employment as a traveling cardiac catheterization technician.

89. Given the itinerant and temporary nature of Kwiatkowski's employment in the medical field, a fact that was known to each defendant, the defendants' failure to discharge the aforesaid duties foreseeably placed at great risk any patient with whom Kwiatkowski might come into contact, including patients of Exeter Hospital.

90. As a direct and proximate result of the aforesaid breaches of duty by each of the defendants, Exeter Hospital and its patients were foreseeably harmed within the State of New Hampshire.

## COUNT I – STATUTORY CONTRIBUTION
## PATIENT A[1] SETTLEMENT

91. The allegations set forth in Paragraphs 1 through 90 are re-alleged for the purpose of this count.

92. One of the patients who tested positive for Hepatitis-C was Patient A.

93. As a result of Patient A's Hepatitis-C infection, on or about 28 September 2012, Patient A sent a demand letter to Exeter Hospital (and others) seeking monetary damages.

94. After engaging in certain discovery, the parties agreed to mediate.

95. As a result of the mediation, the case was settled on 29 November 2012 for a confidential amount.

96. The settlement was paid on or about 1 March 2013.

97. In connection with the settlement, the Administrator of the Estate of Patient A executed a general release of all claims which discharged the common liability of Exeter Hospital, Kwiatkowski, Maxim, ARRT, AHSA and Triage.

98. Kwiatkowski did not contribute to the settlement.

---

[1] To ensure patient confidentiality and privacy, pseudonyms have been used for any patients whose claims were settled before a lawsuit disclosing their identities was filed.

14

99.     Maxim did not contribute to the settlement.

100.    ARRT did not contribute to the settlement.

101.    The amount paid by Exeter Hospital to settle the case and discharge the common liability of the non-contributing defendants was disproportionate to Exeter Hospital's actual responsibility for the Hepatitis-C outbreak.

102.    Pursuant to RSA 507:7 (e), (f), and (g), Exeter hospital is entitled to have the proportionate fault of the non-contributing defendants established, and to be awarded statutory contribution from each non-contributing defendant in an amount that is commensurate with that apportionment.

103.    Exeter Hospital seeks an award of statutory contribution in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

104.    In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this contribution action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT II – CONTRACTUAL INDEMNIFICATION (TRIAGE ONLY)
## PATIENT A SETTLEMENT

105.    The allegations set forth in Paragraphs 1 through 1104 are re-alleged for the purpose of this count.

106.    Prior to the time that Kwiatkowski was referred to Exeter Hospital by Triage, AHSA and Triage had entered into a "Non Physician Standard Agency Staffing Agreement".

107.    Pursuant to the AHSA staffing agreement, Triage was designated as a "Selected Service Provider", and agreed to provide temporary non-physician medical staff to AHSA members, including Exeter Hospital.

108. Under the terms of the AHSA staffing agreement, Exeter Hospital is third party beneficiary of that agreement.

109. Kwiatkowski was referred to Exeter Hospital by Triage pursuant to the terms of the AHSA staffing agreement.

110. Pursuant to the express terms of the AHSA staffing agreement, Triage is obligated to indemnify, defend, and hold Exeter Hospital and its affiliates, officers, directors, and agents harmless from and against all damages, claims, penalties, interest, or other losses arising from a breach of the staffing agreement by Triage (including its staff) or arising from services provided by Triage.

111. Exeter Hospital is entitled to contractual indemnification for all settlement costs, defense costs and litigation expenses incurred in connection with the defense and final disposition of the Patient A claim.

112. Exeter Hospital seeks indemnification from Triage in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

113. In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this indemnification action. See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT III – STATUTORY CONTRIBUTION
## RONALD DUFRESNE SETTLEMENT

114. The allegations set forth in Paragraphs 1 through 113 are re-alleged for the purpose of this count.

115. One of the patients who tested positive for Hepatitis-C was Ronald DuFresne.

116. As a result of his Hepatitis-C infection, on or about 26 June 2012, Ronald DuFresne filed a civil action against Exeter Hospital (and others) seeking an award of monetary damages.

117. After engaging in certain pretrial discovery, the parties agreed to mediate.

118. As a result of the mediation, the case was settled on 19 December 2012 for a confidential amount.

119. The settlement was paid on or about 7 January 2013.

120. In connection with the settlement, Ronald DuFresne executed a general release of all claims which discharged the common liability of Exeter Hospital, Kwiatkowski, Maxim, ARRT, AHSA and Triage.

121. Kwiatkowski did not contribute to the settlement.

122. Maxim did not contribute to the settlement.

123. ARRT did not contribute to the settlement.

124. The amount paid by Exeter Hospital to settle the case and discharge the common liability of the non-contributing defendants was disproportionate to Exeter Hospital's actual responsibility for the Hepatitis-C outbreak.

125. Pursuant to RSA 507:7 (e), (f), and (g), Exeter hospital is entitled to have the proportionate fault of the non-contributing defendants established, and to be awarded statutory contribution from each non-contributing defendant in an amount that is commensurate with that apportionment.

126. Exeter Hospital seeks an award of statutory contribution in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

17

127. In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this contribution action. See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT IV – CONTRACTUAL INDEMNIFICATION (TRIAGE ONLY)
### RONALD DUFRESNE SETTLEMENT

128. The allegations set forth in Paragraphs 1 through 127 are re-alleged for the purpose of this count.

129. Prior to the time that Kwiatkowski was referred to Exeter Hospital by Triage, AHSA and Triage had entered into a "Non Physician Standard Agency Staffing Agreement".

130. Pursuant to the AHSA staffing agreement, Triage was designated as a "Selected Service Provider", and agreed to provide temporary non-physician medical staff to AHSA members, including Exeter Hospital.

131. Under the terms of the AHSA staffing agreement, Exeter Hospital is third party beneficiary of that agreement.

132. Kwiatkowski was referred to Exeter Hospital by Triage pursuant to the terms of the AHSA staffing agreement.

133. Pursuant to the express terms of the AHSA staffing agreement, Triage is obligated to indemnify, defend, and hold Exeter Hospital and its affiliates, officers, directors, and agents harmless from and against all damages, claims, penalties, interest, or other losses arising from a breach of the staffing agreement by Triage (including its staff) or arising from services provided by Triage.

134. Exeter Hospital is entitled to contractual indemnification for all settlement costs, defense costs and litigation expenses incurred in connection with the defense and final disposition of the Ronald Dufresne claim.

135.   Exeter Hospital seeks indemnification from Triage in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

136.   In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this indemnification action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT V – STATUTORY CONTRIBUTION
### PATIENT B SETTLEMENT

137.   The allegations set forth in Paragraphs 1 through 136 are re-alleged for the purpose of this count.

138.   One of the patients who tested positive for Hepatitis-C was Patient B.

139.   As a result of Patient B's Hepatitis-C infection, on or about 14 December 2012, Patient B sent a demand letter to Exeter Hospital (and others) seeking monetary damages.

140.   After engaging in certain discovery, the parties agreed to mediate.

141.   As a result of the mediation, the case was settled on 13 February 2013 for a confidential amount.

142.   The settlement was paid on or about 15 March 2013.

143.   In connection with the settlement, Patient B, and Patient B's spouse executed a general release of all claims which discharged the common liability of Exeter Hospital, Kwiatkowski, Maxim, ARRT, AHSA and Triage.

144.   Kwiatkowski did not contribute to the settlement.

145.   Maxim did not contribute to the settlement.

146.   ARRT did not contribute to the settlement.

147.   AHSA did not contribute to the settlement.

148.   Triage did not contribute to the settlement.

149.   The amount paid by Exeter Hospital to settle the case and discharge the common liability of the non-contributing defendants was disproportionate to Exeter Hospital's actual responsibility for the Hepatitis-C outbreak.

150.   Pursuant to RSA 507:7 (e), (f), and (g), Exeter hospital is entitled to have the proportionate fault of the non-contributing defendants established, and to be awarded statutory contribution from each non-contributing defendant in an amount that is commensurate with that apportionment.

151.   Exeter Hospital seeks an award of statutory contribution in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

152.   In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this contribution action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

### COUNT VI – CONTRACTUAL INDEMNIFICATION (TRIAGE ONLY)
### PATIENT B SETTLEMENT

153.   The allegations set forth in Paragraphs 1 through 152 are re-alleged for the purpose of this count.

154.   Prior to the time that Kwiatkowski was referred to Exeter Hospital by Triage, AHSA and Triage had entered into a "Non Physician Standard Agency Staffing Agreement".

155.   Pursuant to the AHSA staffing agreement, Triage was designated as a "Selected Service Provider", and agreed to provide temporary non-physician medical staff to AHSA members, including Exeter Hospital.

156.   Under the terms of the AHSA staffing agreement, Exeter Hospital is third party beneficiary of that agreement.

157.   Kwiatkowski was referred to Exeter Hospital by Triage pursuant to the terms of the AHSA staffing agreement.

158.   Pursuant to the express terms of the AHSA staffing agreement, Triage is obligated to indemnify, defend, and hold Exeter Hospital and its affiliates, officers, directors, and agents harmless from and against all damages, claims, penalties, interest, or other losses arising from a breach of the staffing agreement by Triage (including its staff) or arising from services provided by Triage.

159.   Exeter Hospital is entitled to contractual indemnification for all settlement costs, defense costs and litigation expenses incurred in connection with the defense and final disposition of the Patient B claim.

160.   Exeter Hospital seeks indemnification from Triage in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

161.   In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this indemnification action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT VII –STATUTORY CONTRIBUTION

### ALDEN SANBORN SETTLEMENT

162.   The allegations set forth in Paragraphs 1 through 161 are re-alleged for the purpose of this count.

163.   One of the patients who tested positive for Hepatitis-C was Alden Sanborn.

164. As a result of his Hepatitis-C infection, on or about 7 August 2012, Alden Sanborn filed a civil action against Exeter Hospital (and others) seeking an award of monetary damages.

165. After engaging in certain pretrial discovery, the parties agreed to mediate.

166. As a result of the mediation, the case was settled on 13 March 2013 for a confidential amount.

167. The settlement was paid on or about 5 April 2013.

168. In connection with the settlement, Alden Sanborn executed a general release of all claims which discharged the common liability of Exeter Hospital, Kwiatkowski, Maxim, ARRT, AHSA and Triage.

169. Kwiatkowski did not contribute to the settlement.

170. Maxim did not contribute to the settlement.

171. ARRT did not contribute to the settlement.

172. AHSA did not contribute to the settlement.

173. Triage did not contribute to the settlement.

174. The amount paid by Exeter Hospital to settle the case and discharge the common liability of the non-contributing defendants was disproportionate to Exeter Hospital's actual responsibility for the Hepatitis-C outbreak.

175. Pursuant to RSA 507:7 (e), (f), and (g), Exeter hospital is entitled to have the proportionate fault of the non-contributing defendants established, and to be awarded statutory contribution from each non-contributing defendant in an amount that is commensurate with that apportionment.

176. Exeter Hospital seeks an award of statutory contribution in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

177. In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this contribution action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT VIII – CONTRACTUAL INDEMNIFICATION (TRIAGE ONLY)
### ALDEN SANBORN SETTLEMENT

178. The allegations set forth in Paragraphs 1 through 177 are re-alleged for the purpose of this count.

179. Prior to the time that Kwiatkowski was referred to Exeter Hospital by Triage, AHSA and Triage had entered into a "Non Physician Standard Agency Staffing Agreement".

180. Pursuant to the AHSA staffing agreement, Triage was designated as a "Selected Service Provider", and agreed to provide temporary non-physician medical staff to AHSA members, including Exeter Hospital.

181. Under the terms of the AHSA staffing agreement, Exeter Hospital is third party beneficiary of that agreement.

182. Kwiatkowski was referred to Exeter Hospital by Triage pursuant to the terms of the AHSA staffing agreement.

183. Pursuant to the express terms of the AHSA staffing agreement, Triage is obligated to indemnify, defend, and hold Exeter Hospital and its affiliates, officers, directors, and agents harmless from and against all damages, claims, penalties, interest, or other losses arising from a breach of the staffing agreement by Triage (including its staff) or arising from services provided by Triage.

23

184.   Exeter Hospital is entitled to contractual indemnification for all settlement costs, defense costs and litigation expenses incurred in connection with the defense and final disposition of the Alden Sanborn claim.

185.   Exeter Hospital seeks indemnification from Triage in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

186.   In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this indemnification action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT IX –STATUTORY CONTRIBUTION
### PATIENT C SETTLEMENT

187.   The allegations set forth in Paragraphs 1 through 186 are re-alleged for the purpose of this count.

188.   One of the patients who tested positive for Hepatitis-C was Patient C.

189.   As a result of Patient C's Hepatitis-C infection, on or about 13 February 2013, Patient C sent a demand letter to Exeter Hospital (and others) seeking monetary damages.

190.   After engaging in certain discovery, the parties agreed to mediate.

191.   As a result of the mediation, the case was settled on 18 April 2013 for a confidential amount.

192.   The settlement was paid on or about 21 June 2013.

193.   In connection with the settlement, Patient C and Patient C's spouse executed a general release of all claims which discharged the common liability of Exeter Hospital, Kwiatkowski, Maxim, ARRT, AHSA and Triage.

194.   Kwiatkowski did not contribute to the settlement.

195.  Maxim did not contribute to the settlement.

196.  ARRT did not contribute to the settlement.

197.  AHSA did not contribute to the settlement.

198.  Triage did not contribute to the settlement.

199.  The amount paid by Exeter Hospital to settle the case and discharge the common liability of the non-contributing defendants was disproportionate to Exeter Hospital's actual responsibility for the Hepatitis-C outbreak.

200.  Pursuant to RSA 507:7 (e), (f), and (g), Exeter hospital is entitled to have the proportionate fault of the non-contributing defendants established, and to be awarded statutory contribution from each non-contributing defendant in an amount that is commensurate with that apportionment.

201.  Exeter Hospital seeks an award of statutory contribution in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

202.  In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this contribution action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT X – CONTRACTUAL INDEMNIFICATION (TRIAGE ONLY)
### PATIENT C SETTLEMENT

203.  The allegations set forth in Paragraphs 1 through 202 are re-alleged for the purpose of this count.

204.  Prior to the time that Kwiatkowski was referred to Exeter Hospital by Triage, AHSA and Triage had entered into a "Non Physician Standard Agency Staffing Agreement".

205. Pursuant to the AHSA staffing agreement, Triage was designated as a "Selected Service Provider", and agreed to provide temporary non-physician medical staff to AHSA members, including Exeter Hospital.

206. Under the terms of the AHSA staffing agreement, Exeter Hospital is third party beneficiary of that agreement.

207. Kwiatkowski was referred to Exeter Hospital by Triage pursuant to the terms of the AHSA staffing agreement.

208. Pursuant to the express terms of the AHSA staffing agreement, Triage is obligated to indemnify, defend, and hold Exeter Hospital and its affiliates, officers, directors, and agents harmless from and against all damages, claims, penalties, interest, or other losses arising from a breach of the staffing agreement by Triage (including its staff) or arising from services provided by Triage.

209. Exeter Hospital is entitled to contractual indemnification for all settlement costs, defense costs and litigation expenses incurred in connection with the defense and final disposition of the Patient C claim.

210. Exeter Hospital seeks indemnification from Triage in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

211. In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this indemnification action. See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XI – STATUTORY CONTRIBUTION

## WILLIAM AND LINDA ROONEY SETTLEMENT

212. The allegations set forth in Paragraphs 1 through 211 are re-alleged for the purpose of this count.

213. One of the patients who tested positive for Hepatitis-C was William Rooney.

214. As a result of his Hepatitis-C infection, on or about 30 July 2012, William Rooney, and his wife, Linda Rooney, filed a civil action against Exeter Hospital (and others) seeking an award of monetary damages.

215. After engaging in certain pretrial discovery, the parties agreed to mediate.

216. As a result of the mediation, the case was settled on 22 August 2013 for a confidential amount.

217. The settlement was paid on or about 23 September 2013.

218. In connection with the settlement, William and Linda Rooney executed a general release of all claims which discharged the common liability of Exeter Hospital, Kwiatkowski, Maxim, ARRT, AHSA and Triage.

219. Kwiatkowski did not contribute to the settlement.

220. Maxim did not contribute to the settlement.

221. ARRT did not contribute to the settlement.

222. AHSA did not contribute to the settlement.

223. The amount paid by Exeter Hospital to settle the case and discharge the common liability of the non-contributing defendants was disproportionate to Exeter Hospital's actual responsibility for the Hepatitis-C outbreak.

224. Pursuant to RSA 507:7 (e), (f), and (g), Exeter hospital is entitled to have the proportionate fault of the non-contributing defendants established, and to be awarded

statutory contribution from each non-contributing defendant in an amount that is commensurate with that apportionment.

225.   Exeter Hospital seeks an award of statutory contribution in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

226.   In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this contribution action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XII – CONTRACTUAL INDEMNIFICATION (TRIAGE ONLY)
## WILLIAM AND LINDA ROONEY SETTLEMENT

227.   The allegations set forth in Paragraphs 1 through 226 are re-alleged for the purpose of this count.

228.   Prior to the time that Kwiatkowski was referred to Exeter Hospital by Triage, AHSA and Triage had entered into a "Non Physician Standard Agency Staffing Agreement".

229.   Pursuant to the AHSA staffing agreement, Triage was designated as a "Selected Service Provider", and agreed to provide temporary non-physician medical staff to AHSA members, including Exeter Hospital.

230.   Under the terms of the AHSA staffing agreement, Exeter Hospital is third party beneficiary of that agreement.

231.   Kwiatkowski was referred to Exeter Hospital by Triage pursuant to the terms of the AHSA staffing agreement.

232.   Pursuant to the express terms of the AHSA staffing agreement, Triage is obligated to indemnify, defend, and hold Exeter Hospital and its affiliates, officers, directors, and agents harmless from and against all damages, claims, penalties, interest, or other losses

arising from a breach of the staffing agreement by Triage (including its staff) or arising from services provided by Triage.

233.    Exeter Hospital is entitled to contractual indemnification for all settlement costs, defense costs and litigation expenses incurred in connection with the defense and final disposition of the William and Linda Rooney claims.

234.    Exeter Hospital seeks indemnification from Triage in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

235.    In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this indemnification action. See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XIII –STATUTORY CONTRIBUTION
## DOUGLAS BARRINGER AND NORMA HOWCROFT SETTLEMENT

236.    The allegations set forth in Paragraphs 1 through 235 are re-alleged for the purpose of this count.

237.    One of the patients who tested positive for Hepatitis-C was Douglas Barringer.

238.    As a result of his Hepatitis-C infection, on or about 12 July 2013, Douglas Barringer and Norma Howcroft, his wife, filed a civil action against Exeter Hospital (and others) seeking an award of monetary damages.

239.    After engaging in certain pretrial discovery, the parties agreed to mediate.

240.    As a result of the mediation, the case was settled on 23 August 2013 for a confidential amount.

241.    The settlement was paid on or about 23 September 2013.

242. In connection with the settlement, Douglas Barringer and Norma Howcroft executed a general release of all claims which discharged the common liability of Exeter Hospital, Kwiatkowski, Maxim, ARRT, AHSA and Triage.

243. Kwiatkowski did not contribute to the settlement.

244. Maxim did not contribute to the settlement.

245. ARRT did not contribute to the settlement.

246. AHSA did not contribute to the settlement.

247. The amount paid by Exeter Hospital to settle the case and discharge the common liability of the non-contributing defendants was disproportionate to Exeter Hospital's actual responsibility for the Hepatitis-C outbreak.

248. Pursuant to RSA 507:7 (e), (f), and (g), Exeter hospital is entitled to have the proportionate fault of the non-contributing defendants established, and to be awarded statutory contribution from each non-contributing defendant in an amount that is commensurate with that apportionment.

249. Exeter Hospital seeks an award of statutory contribution in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

250. In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this contribution action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XIV – CONTRACTUAL INDEMNIFICATION (TRIAGE ONLY)
## DOUGLAS BARRINGER AND NORMA HOWCROFT SETTLEMENT

251. The allegations set forth in Paragraphs 1 through 250 are re-alleged for the purpose of this count.

252.    Prior to the time that Kwiatkowski was referred to Exeter Hospital by Triage, AHSA and Triage had entered into a "Non Physician Standard Agency Staffing Agreement".

253.    Pursuant to the AHSA staffing agreement, Triage was designated as a "Selected Service Provider", and agreed to provide temporary non-physician medical staff to AHSA members, including Exeter Hospital.

254.    Under the terms of the AHSA staffing agreement, Exeter Hospital is third party beneficiary of that agreement.

255.    Kwiatkowski was referred to Exeter Hospital by Triage pursuant to the terms of the AHSA staffing agreement.

256.    Pursuant to the express terms of the AHSA staffing agreement, Triage is obligated to indemnify, defend, and hold Exeter Hospital and its affiliates, officers, directors, and agents harmless from and against all damages, claims, penalties, interest, or other losses arising from a breach of the staffing agreement by Triage (including its staff) or arising from services provided by Triage.

257.    Exeter Hospital is entitled to contractual indemnification for all settlement costs, defense costs and litigation expenses incurred in connection with the defense and final disposition of the Douglas Barringer and Norma Howcroft claims.

258.    Exeter Hospital seeks indemnification from Triage in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

259.    In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this indemnification action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XV – STATUTORY CONTRIBUTION

### PATIENT D SETTLEMENT

260.  The allegations set forth in Paragraphs 1 through 259 are re-alleged for the purpose of this count.

261.  One of the patients who tested positive for Hepatitis-C was Patient D.

262.  As a result of Patient D's Hepatitis-C infection, on or about 27 August 2013, Patient D sent a demand letter to Exeter Hospital (and others) seeking monetary damages.

263.  After engaging in certain discovery, the parties agreed to mediate.

264.  As a result of the mediation, the case was settled on 3 September 2013 for a confidential amount.

265.  The settlement was paid on or about 30 September 2013.

266.  In connection with the settlement, Patient D and Patient D's spouse executed a general release of all claims which discharged the common liability of Exeter Hospital, Kwiatkowski, Maxim, ARRT, AHSA and Triage.

267.  Kwiatkowski did not contribute to the settlement.

268.  Maxim did not contribute to the settlement.

269.  ARRT did not contribute to the settlement.

270.  AHSA did not contribute to the settlement.

271.  The amount paid by Exeter Hospital to settle the case and discharge the common liability of the non-contributing defendants was disproportionate to Exeter Hospital's actual responsibility for the Hepatitis-C outbreak.

272.  Pursuant to RSA 507:7 (e), (f), and (g), Exeter hospital is entitled to have the proportionate fault of the non-contributing defendants established, and to be awarded

statutory contribution from each non-contributing defendant in an amount that is commensurate with that apportionment.

273.  Exeter Hospital seeks an award of statutory contribution in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

274.  In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in this prosecution of this contribution action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XVI – CONTRACTUAL INDEMNIFICATION (TRIAGE ONLY)
### PATIENT D SETTLEMENT

275.  The allegations set forth in Paragraphs 1 through 274 are re-alleged for the purpose of this count.

276.  Prior to the time that Kwiatkowski was referred to Exeter Hospital by Triage, AHSA and Triage had entered into a "Non Physician Standard Agency Staffing Agreement".

277.  Pursuant to the AHSA staffing agreement, Triage was designated as a "Selected Service Provider", and agreed to provide temporary non-physician medical staff to AHSA members, including Exeter Hospital.

278.  Under the terms of the AHSA staffing agreement, Exeter Hospital is third party beneficiary of that agreement.

279.  Kwiatkowski was referred to Exeter Hospital by Triage pursuant to the terms of the AHSA staffing agreement.

280.  Pursuant to the express terms of the AHSA staffing agreement, Triage is obligated to indemnify, defend, and hold Exeter Hospital and its affiliates, officers, directors, and agents harmless from and against all damages, claims, penalties, interest, or other losses

arising from a breach of the staffing agreement by Triage (including its staff) or arising from services provided by Triage.

281. Exeter Hospital is entitled to contractual indemnification for all settlement costs, defense costs and litigation expenses incurred in connection with the defense and final disposition of the Patient D claim.

282. Exeter Hospital seeks indemnification from Triage in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

283. In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this indemnification action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XVII – STATUTORY CONTRIBUTION
## KATHLEEN ROHWER SETTLEMENT

284. The allegations set forth in Paragraphs 1 through 283 are re-alleged for the purpose of this count.

285. One of the patients who tested positive for Hepatitis-C was Kathleen Rohwer.

286. As a result of her Hepatitis-C infection, on or about 14 June 2012, Kathleen Rohwer filed a civil action against Exeter Hospital (and others) seeking an award of monetary damages.

287. After engaging in certain pretrial discovery, the parties agreed to mediate.

288. As a result of the mediation, the case was settled on 4 September 2013 for a confidential amount.

289. The settlement was paid on or about 23 September 2013.

290.   In connection with the settlement, Kathleen Rohwer executed a general release of all claims which discharged the common liability of Exeter Hospital, Kwiatkowski, Maxim, ARRT, AHSA and Triage.

291.   Kwiatkowski did not contribute to the settlement.

292.   Maxim did not contribute to the settlement.

293.   ARRT did not contribute to the settlement.

294.   AHSA did not contribute to the settlement.

295.   The amount paid by Exeter Hospital to settle the case and discharge the common liability of the non-contributing defendants was disproportionate to Exeter Hospital's actual responsibility for the Hepatitis-C outbreak.

296.   Pursuant to RSA 507:7 (e), (f), and (g), Exeter hospital is entitled to have the proportionate fault of the non-contributing defendants established, and to be awarded statutory contribution from each non-contributing defendant in an amount that is commensurate with that apportionment.

297.   Exeter Hospital seeks an award of statutory contribution in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

298.   In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this contribution action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XVIII – CONTRACTUAL INDEMNIFICATION (TRIAGE ONLY)
### KATHLEEN ROHWER SETTLEMENT

299.   The allegations set forth in Paragraphs 1 through 298 are re-alleged for the purpose of this count.

300. Prior to the time that Kwiatkowski was referred to Exeter Hospital by Triage, AHSA and Triage had entered into a "Non Physician Standard Agency Staffing Agreement".

301. Pursuant to the AHSA staffing agreement, Triage was designated as a "Selected Service Provider", and agreed to provide temporary non-physician medical staff to AHSA members, including Exeter Hospital.

302. Under the terms of the AHSA staffing agreement, Exeter Hospital is third party beneficiary of that agreement.

303. Kwiatkowski was referred to Exeter Hospital by Triage pursuant to the terms of the AHSA staffing agreement.

304. Pursuant to the express terms of the AHSA staffing agreement, Triage is obligated to indemnify, defend, and hold Exeter Hospital and its affiliates, officers, directors, and agents harmless from and against all damages, claims, penalties, interest, or other losses arising from a breach of the staffing agreement by Triage (including its staff) or arising from services provided by Triage.

305. Exeter Hospital is entitled to contractual indemnification for all settlement costs, defense costs and litigation expenses incurred in connection with the defense and final disposition of the Kathleen Rohwer claim.

306. Exeter Hospital seeks indemnification from Triage in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

307. In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this indemnification action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XIX – STATUTORY CONTRIBUTION
### RONAL SMALL SETTLEMENT

308.  The allegations set forth in Paragraphs 1 through 307 are re-alleged for the purpose of this count.

309.  One of the patients who tested positive for Hepatitis-C was Ronal Small.

310.  As a result of his Hepatitis-C infection, on or about 11 July 2012, Ronal Small filed a civil action against Exeter Hospital (and others) seeking an award of monetary damages.

311.  After engaging in certain pretrial discovery, the parties agreed to mediate.

312.  As a result of the mediation, the case was settled on 19 April 2013 for a confidential amount.

313.  The settlement was paid on or about 3 June 2013.

314.  In connection with the settlement, Ronal Small executed a general release of all claims which discharged the common liability of Exeter Hospital, Kwiatkowski, Maxim, ARRT, AHSA and Triage.

315.  Kwiatkowski did not contribute to the settlement.

316.  Maxim did not contribute to the settlement.

317.  ARRT did not contribute to the settlement.

318.  The amount paid by Exeter Hospital to settle the case and discharge the common liability of the non-contributing defendants was disproportionate to Exeter Hospital's actual responsibility for the Hepatitis-C outbreak.

319.  Pursuant to RSA 507:7 (e), (f), and (g), Exeter hospital is entitled to have the proportionate fault of the non-contributing defendants established, and to be awarded statutory contribution from each non-contributing defendant in an amount that is commensurate with that apportionment.

37

320. Exeter Hospital seeks an award of statutory contribution in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

321. In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this contribution action. See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XX – CONTRACTUAL INDEMNIFICATION (TRIAGE ONLY)
## RONAL SMALL SETTLEMENT

322. The allegations set forth in Paragraphs 1 through 321 are re-alleged for the purpose of this count.

323. Prior to the time that Kwiatkowski was referred to Exeter Hospital by Triage, AHSA and Triage had entered into a "Non Physician Standard Agency Staffing Agreement".

324. Pursuant to the AHSA staffing agreement, Triage was designated as a "Selected Service Provider", and agreed to provide temporary non-physician medical staff to AHSA members, including Exeter Hospital.

325. Under the terms of the AHSA staffing agreement, Exeter Hospital is third party beneficiary of that agreement.

326. Kwiatkowski was referred to Exeter Hospital by Triage pursuant to the terms of the AHSA staffing agreement.

327. Pursuant to the express terms of the AHSA staffing agreement, Triage is obligated to indemnify, defend, and hold Exeter Hospital and its affiliates, officers, directors, and agents harmless from and against all damages, claims, penalties, interest, or other losses arising from a breach of the staffing agreement by Triage (including its staff) or arising from services provided by Triage.

328. Exeter Hospital is entitled to contractual indemnification for all settlement costs, defense costs and litigation expenses incurred in connection with the defense and final disposition of the Ronal Small claim.

329. Exeter Hospital seeks indemnification from Triage in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

330. In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this indemnification action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XXI – STATUTORY CONTRIBUTION
## BRUCE MOLLEUR AND RUTH MOLLEUR SETTLEMENT

331. The allegations set forth in Paragraphs 1 through 330 are re-alleged for the purpose of this count.

332. One of the patients who tested positive for Hepatitis-C was Bruce Molleur.

333. As a result of his Hepatitis-C infection, on or about 13 November 2012, Bruce Molleur and his wife, Ruth Molleur, filed a civil action against Exeter Hospital (and others) seeking an award of monetary damages.

334. After engaging in certain pretrial discovery, the parties agreed to mediate.

335. As a result of the mediation, the case was settled on 2 October 2013 for a confidential amount.

336. The settlement was paid on or about 15 October 2013.

337. In connection with the settlement, Bruce Molleur, and his wife, Ruth Molleur, executed a general release of all claims which discharged the common liability of Exeter Hospital, Kwiatkowski, Maxim, ARRT, AHSA and Triage.

338. Kwiatkowski did not contribute to the settlement.

339. Maxim did not contribute to the settlement.

340. ARRT did not contribute to the settlement.

341. AHSA did not contribute to the settlement.

342. The amount paid by Exeter Hospital to settle the case and discharge the common liability of the non-contributing defendants was disproportionate to Exeter Hospital's actual responsibility for the Hepatitis-C outbreak.

343. Pursuant to RSA 507:7 (e), (f), and (g), Exeter hospital is entitled to have the proportionate fault of the non-contributing defendants established, and to be awarded statutory contribution from each non-contributing defendant in an amount that is commensurate with that apportionment.

344. Exeter Hospital seeks an award of statutory contribution in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

345. In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this contribution action. See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XXII – CONTRACTUAL INDEMNIFICATION (TRIAGE ONLY)
## BRUCE MOLLEUR AND RUTH MOLLEUR SETTLEMENT

346. The allegations set forth in Paragraphs 1 through 345 are re-alleged for the purpose of this count.

347. Prior to the time that Kwiatkowski was referred to Exeter Hospital by Triage, AHSA and Triage had entered into a "Non Physician Standard Agency Staffing Agreement".

348.   Pursuant to the AHSA staffing agreement, Triage was designated as a "Selected Service Provider", and agreed to provide temporary non-physician medical staff to AHSA members, including Exeter Hospital.

349.   Under the terms of the AHSA staffing agreement, Exeter Hospital is third party beneficiary of that agreement.

350.   Kwiatkowski was referred to Exeter Hospital by Triage pursuant to the terms of the AHSA staffing agreement.

351.   Pursuant to the express terms of the AHSA staffing agreement, Triage is obligated to indemnify, defend, and hold Exeter Hospital and its affiliates, officers, directors, and agents harmless from and against all damages, claims, penalties, interest, or other losses arising from a breach of the staffing agreement by Triage (including its staff) or arising from services provided by Triage.

352.   Exeter Hospital is entitled to contractual indemnification for all settlement costs, defense costs and litigation expenses incurred in connection with the defense and final disposition of the Bruce Molleur and Ruth Molleur claims.

353.   Exeter Hospital seeks indemnification from Triage in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

354.   In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this indemnification action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XXIII –STATUTORY CONTRIBUTION
### PATIENT E SETTLEMENT

355. The allegations set forth in Paragraphs 1 through 354 are re-alleged for the purpose of this count.

356. One of the patients who tested positive for Hepatitis-C was Patient E.

357. As a result of Patient E's Hepatitis-C infection, representatives of Patient E contacted representatives of Exeter Hospital (and others) seeking monetary damages.

358. After engaging in certain negotiations, the case was settled on 4 November 2013 for a confidential amount.

359. In connection with the settlement, representatives for Patient E have agreed to execute a general release of all claims which will discharge the common liability of Exeter Hospital, Kwiatkowski, Maxim, ARRT, AHSA and Triage.

360. The settlement will be paid upon receipt of the agreed-upon general release of all claims.

361. Kwiatkowski did not contribute to the settlement.

362. Maxim did not contribute to the settlement.

363. ARRT did not contribute to the settlement.

364. AHSA did not contribute to the settlement.

365. Triage did not contribute to the settlement.

366. The amount paid by Exeter Hospital to settle the case and discharge the common liability of the non-contributing defendants was disproportionate to Exeter Hospital's actual responsibility for the Hepatitis-C outbreak.

367. Pursuant to RSA 507:7 (e), (f), and (g), Exeter hospital is entitled to have the proportionate fault of the non-contributing defendants established, and to be awarded statutory contribution from each non-contributing defendant in an amount that is commensurate with that apportionment.

368.   Exeter Hospital seeks an award of statutory contribution in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

369.   In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this contribution action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XXIV – CONTRACTUAL INDEMNIFICATION (TRIAGE ONLY)
### PATIENT E SETTLEMENT

370.   The allegations set forth in Paragraphs 1 through 369 are re-alleged for the purpose of this count.

371.   Prior to the time that Kwiatkowski was referred to Exeter Hospital by Triage, AHSA and Triage had entered into a "Non Physician Standard Agency Staffing Agreement".

372.   Pursuant to the AHSA staffing agreement, Triage was designated as a "Selected Service Provider", and agreed to provide temporary non-physician medical staff to AHSA members, including Exeter Hospital.

373.   Under the terms of the AHSA staffing agreement, Exeter Hospital is third party beneficiary of that agreement.

374.   Kwiatkowski was referred to Exeter Hospital by Triage pursuant to the terms of the AHSA staffing agreement.

375.   Pursuant to the express terms of the AHSA staffing agreement, Triage is obligated to indemnify, defend, and hold Exeter Hospital and its affiliates, officers, directors, and agents harmless from and against all damages, claims, penalties, interest, or other losses arising from a breach of the staffing agreement by Triage (including its staff) or arising from services provided by Triage.

43

376. Exeter Hospital is entitled to contractual indemnification for all settlement costs, defense costs and litigation expenses incurred in connection with the defense and final disposition of the Patient E claim.

377. Exeter Hospital seeks indemnification from Triage in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

378. In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this indemnification action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XXV – STATUTORY CONTRIBUTION
### PATIENT F SETTLEMENT

379. The allegations set forth in Paragraphs 1 through 378 are re-alleged for the purpose of this count.

380. One of the patients who tested positive for Hepatitis-C was Patient F.

381. As a result of Patient F's Hepatitis-C infection, on or about 23 July 2013, Patient F sent a demand letter to Exeter Hospital (and others) seeking monetary damages.

382. After engaging in certain discovery, the parties agreed to mediate.

383. As a result of the mediation, the case was settled on 7 November 2013 for a confidential amount.

384. In connection with the settlement, Patient F has agreed to execute a general release of all claims which will discharge the common liability of Exeter Hospital, Kwiatkowski, Maxim, ARRT, AHSA and Triage.

385. The settlement will be paid upon receipt of the agreed-upon general release of all claims.

386. Kwiatkowski did not contribute to the settlement.

387.   Maxim did not contribute to the settlement.

388.   ARRT did not contribute to the settlement.

389.   Triage did not contribute to the settlement.

390.   The amount paid by Exeter Hospital to settle the case and discharge the common liability of the non-contributing defendants was disproportionate to Exeter Hospital's actual responsibility for the Hepatitis-C outbreak.

391.   Pursuant to RSA 507:7 (e), (f), and (g), Exeter hospital is entitled to have the proportionate fault of the non-contributing defendants established, and to be awarded statutory contribution from each non-contributing defendant in an amount that is commensurate with that apportionment.

392.   Exeter Hospital seeks an award of statutory contribution in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

393.   In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this contribution action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XXVI – CONTRACTUAL INDEMNIFICATION (TRIAGE ONLY)
## PATIENT F SETTLEMENT

394.   The allegations set forth in Paragraphs 1 through 393 are re-alleged for the purpose of this count.

395.   Prior to the time that Kwiatkowski was referred to Exeter Hospital by Triage, AHSA and Triage had entered into a "Non Physician Standard Agency Staffing Agreement".

396.  Pursuant to the AHSA staffing agreement, Triage was designated as a "Selected Service Provider", and agreed to provide temporary non-physician medical staff to AHSA members, including Exeter Hospital.

397.  Under the terms of the AHSA staffing agreement, Exeter Hospital is third party beneficiary of that agreement.

398.  Kwiatkowski was referred to Exeter Hospital by Triage pursuant to the terms of the AHSA staffing agreement.

399.  Pursuant to the express terms of the AHSA staffing agreement, Triage is obligated to indemnify, defend, and hold Exeter Hospital and its affiliates, officers, directors, and agents harmless from and against all damages, claims, penalties, interest, or other losses arising from a breach of the staffing agreement by Triage (including its staff) or arising from services provided by Triage.

400.  Exeter Hospital is entitled to contractual indemnification for all settlement costs, defense costs and litigation expenses incurred in connection with the defense and final disposition of the Patient F claim.

401.  Exeter Hospital seeks indemnification from Triage in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

402.  In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this indemnification action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XXVII –STATUTORY CONTRIBUTION
## MARIO SECINARO SETTLEMENT

403. The allegations set forth in Paragraphs 1 through 402 are re-alleged for the purpose of this count.

404. One of the patients who tested positive for Hepatitis-C was Mario Secinaro.

405. As a result of his Hepatitis-C infection, on or about 17 July 2012, Mario Secinaro filed a civil action against Exeter Hospital (and others) seeking an award of monetary damages.

406. After engaging in certain pretrial discovery, the parties agreed to mediate.

407. As a result of the mediation, the case was settled on 7 November 2013 for a confidential amount.

408. In connection with the settlement, Mario Secinaro has agreed to execute a general release of all claims which will discharge the common liability of Exeter Hospital, Kwiatkowski, Maxim, ARRT, AHSA and Triage.

409. The settlement will be paid upon receipt of the agreed-upon general release of all claims.

410. Kwiatkowski did not contribute to the settlement.

411. Maxim did not contribute to the settlement.

412. ARRT did not contribute to the settlement.

413. Triage did not contribute to the settlement.

414. The amount paid by Exeter Hospital to settle the case and discharge the common liability of the non-contributing defendants was disproportionate to Exeter Hospital's actual responsibility for the Hepatitis-C outbreak.

415. Pursuant to RSA 507:7 (e), (f), and (g), Exeter hospital is entitled to have the proportionate fault of the non-contributing defendants established, and to be awarded

47

statutory contribution from each non-contributing defendant in an amount that is commensurate with that apportionment.

416. Exeter Hospital seeks an award of statutory contribution in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

417. In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this contribution action. See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## COUNT XXVIII – CONTRACTUAL INDEMNIFICATION (TRIAGE ONLY)
### MARIO SECINARO SETTLEMENT

418. The allegations set forth in Paragraphs 1 through 417 are re-alleged for the purpose of this count.

419. Prior to the time that Kwiatkowski was referred to Exeter Hospital by Triage, AHSA and Triage had entered into a "Non Physician Standard Agency Staffing Agreement".

420. Pursuant to the AHSA staffing agreement, Triage was designated as a "Selected Service Provider", and agreed to provide temporary non-physician medical staff to AHSA members, including Exeter Hospital.

421. Under the terms of the AHSA staffing agreement, Exeter Hospital is third party beneficiary of that agreement.

422. Kwiatkowski was referred to Exeter Hospital by Triage pursuant to the terms of the AHSA staffing agreement.

423. Pursuant to the express terms of the AHSA staffing agreement, Triage is obligated to indemnify, defend, and hold Exeter Hospital and its affiliates, officers, directors, and agents harmless from and against all damages, claims, penalties, interest, or other losses

arising from a breach of the staffing agreement by Triage (including its staff) or arising from services provided by Triage.

424. Exeter Hospital is entitled to contractual indemnification for all settlement costs, defense costs and litigation expenses incurred in connection with the defense and final disposition of the Mario Secinaro claim.

425. Exeter Hospital seeks indemnification from Triage in an amount that is in excess of the minimum jurisdictional limits of the New Hampshire Superior Court, plus interest and taxable costs.

426. In addition, Exeter Hospital seeks an award of all attorneys' fees reasonably incurred in the prosecution of this indemnification action.  See *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977).

## JURY TRIAL DEMANDED

427. A jury trial is demanded as to all counts.

Respectfully submitted,

**Exeter Hospital, Inc.**

By its attorneys,

Devine, Millimet & Branch
Professional Association

Dated:  18 November 2013

Robert C. Dewhirst, NHBA #634
Elaine M. Michaud, NHBA #10030
111 Amherst Street
Manchester, NH  03101
(603) 669-1000
rdewhirst@devinemillimet.com
emichaud@devinemillimet.com

A/H

STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                                   SUPERIOR COURT

Exeter Hospital, Inc.

v.

David Kwiatkowski
Maxim Healthcare Services, Inc.
The American Registry of Radiological Technologists
American HealthCare Services Association, LLC
Triage Staffing, Inc.

Docket No. 218-2013-CV-01259

ACCEPTANCE OF SERVICE OF PROCESS

I, Mark A. Darling, Esquire, of Litchfield Cavo, LLP, as duly authorized counsel

for The American Registry of Radiologic Technologists, do hereby accept service of the

Civil Complaint in the above-captioned civil matter, and hereby waive any defense as to

the sufficiency of the service of that process on the defendant.  No other claim or defense

of any nature whatsoever is waived.


Dated: ___12|6|13___

Mark A. Darling, Esquire
NH Bar No. 4803
Litchfield Cavo, LLP
6 Kimball Lane, Suite 200
Lynnfield, MA 01940-2682
(781) 309-1500
darling@litchfieldcavo.com

STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                                          SUPERIOR COURT

Exeter Hospital, Inc.

v.

David Kwiatkowski
Maxim Healthcare Services, Inc.
The American Registry of Radiological Technologists
American HealthCare Services Association, LLC
Triage Staffing, Inc.

Docket No. 218-2013-CV-01259

ACCEPTANCE OF SERVICE OF PROCESS

I, Ralph Suozzo, Esquire, of Morrison Mahoney, LLP, as duly authorized counsel for
Triage Staffing, Inc., do hereby accept service of the Civil Complaint in the above-captioned
civil matter, and hereby waive any defense as to the sufficiency of the service of that pleading on
the defendant.  No other claims or defenses of any nature whatsoever are waived.

Dated: __12/6/13__                        _____
                                          Ralph Suozzo, Esquire
                                          NH Bar No. 12946
                                          Morrison Mahoney, LLP
                                          1001 Elm Street, Suite 205
                                          Manchester, NH   03101
                                          (603) 622-3400
                                          rsuozzo@morrisonmahoney.com

STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                                                    SUPERIOR COURT

Exeter Hospital, Inc.

v.

David Kwiatkowski
Maxim Healthcare Services, Inc.
The American Registry of Radiological Technologists
American HealthCare Services Association, LLC
Triage Staffing, Inc.


Docket No. 218-2013-CV-01259


ACCEPTANCE OF SERVICE OF PROCESS

    I, Peter A. Meyer, Esquire, of Sulloway & Hollis, PLLC, as duly authorized counsel for
Maxim Healthcare Services, Inc., do hereby accept service of the Civil Complaint in the above-
captioned civil matter, and hereby waive any defense as to the sufficiency of the service of that
pleading on the defendant. No other claims or defenses of any nature whatsoever are waived.



Dated:  12/6/13                              _____
                                             Peter A. Meyer, Esquire
                                             NH Bar No. 1745
                                             Sulloway & Hollis, PLLC
                                             9 Capitol Street
                                             Post Office Box 1256
                                             Concord, NH   03302-1256
                                             (603) 224-2341
                                             pmeyer@sulloway.com

STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                                        SUPERIOR COURT

Exeter Hospital, Inc.

v.

David Kwiatkowski
Maxim Healthcare Services, Inc.
The American Registry of Radiological Technologists
American HealthCare Services Association, LLC
Triage Staffing, Inc.

Docket No. 218-2013-CV-01259

ACCEPTANCE OF SERVICE OF PROCESS

I, Robert G. Whaland, Esquire, of McDonough, O'Shaughnessy, Whaland & Meagher, PLLC, as duly authorized counsel for American HealthCare Services Association, LLC, do hereby accept service of the Civil Complaint in the above-captioned civil matter, and hereby waive any defense as to the sufficiency of the service of that pleading on the defendant. No other claims or defenses of any nature whatsoever are waived.

Dated: 12-9-2013

Robert G. Whaland, Esquire
NH Bar No. 2719
McDonough, O'Shaughnessy, Whaland &
Meagher, PLLC
42 West Brook Street
Manchester, NH   03101
(603) 669-8300
rwhaland@lawfirmnh.com