UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Exeter Hospital, Inc.,
        Plaintiff

v.                                    Case No. 14-cv-009-SM
                                      Opinion No. 2016 DNH 200

David Kwiatkowski; Maxim
Healthcare Services, Inc.;
The American Registry of
Radiologic Technologists;
and Triage Staffing, Inc.,
        Defendants


                        **O R D E R**


        In 2012, thirty two former patients of Exeter Hospital

tested positive for Hepatitis-C.  And, it was discovered, a

substantially larger number had, potentially, been exposed to

the virus.  That outbreak was caused by David Kwiatkowski, an

intravenous drug user who was employed by the hospital as a

cardiac catheterization technician in 2011 and 2012.  Exeter

Hospital subsequently settled a large number of claims, both

from patients who had actually been infected with the Hepatitis-

C virus, as well as patients who, although not infected, sought

compensation for injuries related to their having had to undergo

testing as well as their fear of having contracted the disease.

The hospital then filed this statutory contribution action

against several defendants, seeking to recover damages it

sustained and expenses it incurred in connection with settling those claims. It also seeks contractual indemnification from Triage Staffing - the employment agency that placed Kwiatkowski at the hospital.

Pending before the court are two motions to dismiss. The American Registry of Radiologic Technologists ("ARRT") moves to dismiss count 73 of the Third Amended Complaint, which seeks statutory contribution for sums Exeter Hospital paid to patients who were tested for Hepatitis-C, but who did not actually contract the disease (the so-called "negative results claimants"). Triage Staffing also moves to dismiss that count. Additionally, Triage moves to dismiss count 74, in which Exeter Hospital seeks contractual indemnification from Triage for the same sums. For the reasons discussed, those motions to dismiss are granted, without prejudice to Exeter Hospital's ability to amend counts 73 and 74, as discussed below.

### Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). Although the complaint need only contain "a

short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted).

In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, the facts alleged in the complaint must, if credited as true, be sufficient to "nudge[] [plaintiff's] claims across the line from conceivable to plausible." Id. at 570. If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Tambone, 597 F.3d at 442. Such is the case here.

### Background

Most of the relevant factual allegations are set forth in the court's prior order (document no. 48) and need not be

recounted.  It is sufficient to note that Exeter Hospital
alleges the following.  David Kwiatkowski was a cardiac
catheterization technician who, between 2003 and 2012, was
employed by approximately 19 different hospitals throughout the
country.  In June of 2010, he tested positive for Hepatitis-C
and, about one year later, in April of 2011, he began working at
Exeter Hospital, in Exeter, New Hampshire.

Kwiatkowski was an intravenous drug user who often stole
drugs from his hospital employers.  He injected the drugs and
covered up his conduct by refilling the used syringes with
saline and returning them to the hospital's inventory.  When the
tainted syringes were subsequently used, patients were either
exposed to, or actually infected with, the Hepatitis-C virus.
As part of its investigation into the Hepatitis-C outbreak,
Exeter Hospital (along with the New Hampshire Department of
Health and Human Services) contacted patients who had received
care in the catheterization lab and other unspecified areas of
the hospital, recommending they undergo testing.  More than
3,000 people were tested and, of them, a total of 32 former
patients tested positive for Hepatitis-C.  Subsequently, a
number of those infected patients sued Exeter Hospital.  An
additional 188 patients who tested negative for the disease also
advanced claims against the hospital (but did not actually file

suit).   Exeter Hospital settled many of those claims (from both infected and non-infected parties) and obtained releases for itself as well as all of the named defendants.   It then filed this action, seeking statutory contribution (and, with respect to Triage, contractual indemnification).

Exeter Hospital alleges that Triage Staffing knew Kwiatkowski had Hepatitis-C and, despite that knowledge, it "continued to expose hospital patients to the potential risk of contracting the virus for years before [it] recommended him for employment at Exeter Hospital."   Third Amended Complaint (document no. 74) at para. 35.   Exeter Hospital also alleges that it reasonably relied upon Triage to properly screen Kwiatkowski before recommending him for employment by the hospital.   Id. at para. 64.   As for the American Registry of Radiologic Technologists, Exeter Hospital says it was aware of Kwiatkowski's history of drug use, yet undertook no meaningful investigation into his conduct and failed to revoke his national certification.   Id. at paras. 55-58.   That conduct (or inaction) on the part of ARRT and Triage, says the hospital, proximately caused the injuries allegedly sustained by the negative results claimants.

All agree that, as for the 188 negative results claimants at issue, the operative paragraph in Exeter Hospital's Third Amended Complaint alleges that:

> Although Patients N001 through N188 tested negative for the virus, they presented claims for damages to Exeter Hospital, <u>alleging</u> that they <u>each suffered diverse physical and emotional injuries</u> as a direct result of learning of their potential infection with the Hepatitis-C virus; of having to undergo the recommended Hepatitis-C testing; and of having to wait days (or in some cases, weeks) before learning that their test results were negative.

Third Amended Complaint, at para. 953 (emphasis supplied).  ARRT and Triage join in asserting that those allegations are simply too meager to state a viable cause of action.  Accordingly, they move to dismiss those counts in the Third Amended Complaint relating to the 188 non-infected patients.


## Discussion

Under New Hampshire law, "a right of contribution exists between or among 2 or more persons who are jointly and severally liable upon the same indivisible claim, or otherwise liable for the same injury, death, or harm."  N.H. Rev. Stat. Ann. ("RSA") 507:7-f I.  Having settled the claims advanced by the 188 negative results claimants for their alleged "diverse physical and emotional injuries," Exeter Hospital now seeks contribution from each of the named defendants for their joint and several

6

liability to those patients.  The source of that joint and several liability is, however, unclear.  Exeter Hospital's amended complaint fails to articulate any precise cause(s) of action the negative results claimants might have had against the hospital and for which ARRT and/or Triage would be jointly and severally liable.  In its opposition memoranda, however, Exeter Hospital suggests that such a cause of action might be based on negligence, or negligent infliction of emotional distress, or possibly even intentional infliction of emotional distress.  The court disagrees.

Perhaps the most significant shortcoming of the amended complaint is its failure to plausibly allege that any of the negative results claimants were actually exposed to the Hepatitis-C virus, or even that it is reasonably likely that they were exposed.  The amended complaint does not, for example, allege that Kwiatkowski was the cardiac technician from whom they received care, or that they actually received some sort of intravenous medication or procedure while at the hospital during Kwiatkowski's tenure as a cardiac catheterization technician.  Nor does it allege that they were patients at the hospital during the relevant time period and under circumstances suggesting that transmission to them of the Hepatitis-C virus was reasonably possible.  Absent such factual claims, the Third

Amended Complaint fails to adequately allege that each of the
188 negative results claimants was adequately exposed to the
Hepatitis-C virus to have a <u>reasonable</u> fear of developing the
illness.  <u>See generally</u> <u>Kenyon v. Cheshire Cty. Jail Adm'r</u>, No.
CIV. 92-515-M, 1994 WL 529925, at *5 (D.N.H. Sept. 22, 1994)
(noting that to state a viable claim, plaintiff "must allege a
specific incident of possible exposure that could lead to a
reasonable fear of developing AIDS" and concluding that
"plaintiff's allegations that he <u>might</u> have been exposed to AIDS
and has suffered emotional distress as a result are inadequate
as a matter of law to state a claim for emotional distress upon
which relief could be granted.") (emphasis in original).  <u>See</u>
<u>also</u> <u>Marlin v. Bill Rich Constr.</u>, 198 W. Va. 635, 653, 482
S.E.2d 620, 638 (1996) (holding that plaintiff must allege that
he or she was "actually exposed" to the disease by the
defendant's negligent conduct and that "the exposure upon which
the claim is based raises a medically established possibility of
contracting a disease"); <u>Neal v. Neal</u>, 125 Idaho 617, 622, 873
P.2d 871, 876 (1994) ("Damages are recoverable for emotional
distress claims resulting from the present fear of developing a
future disease only if the mental injury alleged is shown to be
sufficiently genuine and the fear reasonable.  We hold that
there can be no reasonable fear of contracting such a disease
absent proof of actual exposure."); <u>Dillard v. Torgerson</u>

Properties, Inc., No. CIV. 05-2334(PAMJSM), 2006 WL 2974302, at
*3 (D. Minn. Oct. 16, 2006) (dismissing plaintiff's negligent
infliction claim because she could not show "that she was
actually exposed to a communicable disease," and noting that
"most jurisdictions that have considered emotional distress
claims based on the fear of contracting HIV have required actual
exposure to HIV").

Rather than alleging a plausible instance of at least
possible exposure to Hepatitis-C for each of the negative
results claimants, the amended complaint suggests that Exeter
Hospital (laudably) tested those patients out of an abundance of
caution and, ultimately, settled their claims despite the fact
that there may have been no legal obligation to do so (or, at a
minimum, without requiring those claimants to demonstrate that
they had, indeed, suffered legally compensable emotional
distress).  Of course, independent of any legal obligation the
hospital may have had to compensate the negative results
claimants, one can imagine many reasons that might have
motivated the hospital to settle those claims quickly and out of
court.  But, absent actual legal liability on the part of the
hospital (and ARRT and Triage) to those patients, the hospital
cannot recover on its contribution claims against ARRT and
Triage.

Additionally, to the extent Exeter Hospital seeks to recover for settlements related to emotional distress allegedly suffered by the negative results claimants, the amended complaint fails to adequately allege that each (or, indeed, any) of them suffered objective physical manifestations or symptoms of their emotional distress – an essential element of a viable claim for emotional distress under applicable New Hampshire law. See, e.g., Tessier v. Rockefeller, 162 N.H. 324, 342 (2011) (noting that one of the essential elements of a viable claim for negligent infliction of emotional distress is "serious mental and emotional harm accompanied by objective physical symptoms."). See also O'Donnell v. HCA Health Servs. of N.H., Inc., 152 N.H. 608, 611–12, 883 A.2d 319, 324 (2005) ("To recover for emotional distress under a traditional negligence theory, we have consistently required plaintiffs to demonstrate physical symptoms of their distress regardless of physical impact."); Palmer v. Nan King Rest., Inc., 147 N.H. 681, 684 (2002) ("[I]n order to recover for emotional distress under a traditional negligence theory, the plaintiff must demonstrate physical symptoms of her distress.").  In other words, to state a viable claim for emotional distress, the hospital must allege that each individual claimant's emotional distress was "sufficiently serious" to have manifested itself through physical symptoms.  In re Bayview Crematory, LLC, 155 N.H. 781,

786 (2007).  Exeter Hospital's general allegation that the
negative results claimants suffered "diverse physical and
emotional injuries as a result of learning of their potential
infection" is not sufficient.[1]

Parenthetically, the court notes that even if the amended
complaint did adequately plead a claim for emotional distress
damages (it does not), if this case were to proceed to trial,
Exeter Hospital would have to introduce expert medical testimony
in order to demonstrate that each individual claimant suffered a
physical manifestation or symptom, which was causally related to
his or her emotional injuries.  See, e.g., In re Bayview
Crematory, LLC, 155 N.H. at 786 ("To ensure that the emotional
injury is sufficiently serious to warrant legal protection and
establish a cause of action, expert testimony is required to
prove physical symptoms suffered from alleged negligent
infliction of emotional distress."); O'Donnell, 152 N.H. at 612
("Though the plaintiffs claim great suffering, we have held that

---

[1]     Because none of the negative results claimants actually
filed suit against Exeter Hospital, no formal discovery was
conducted and the nature and severity of each individual's
claimed emotional distress may be unclear.  Consequently, Exeter
Hospital may not have been able to allege, in good faith, that
each of the negative results claimants suffered emotional
distress that was sufficiently severe to manifest itself in
physical symptoms.

expert testimony is required to recover damages for negligent infliction of emotional distress.").

Finally, it probably bears noting that the needle stick that the negative results claimants may have had to endure as part of the testing process (the only specific physical injury Exeter Hospital identifies) is <u>not</u> a physical manifestation of emotional distress associated with the fear of having potentially contracted Hepatitis-C.  <u>See, e.g.</u>, <u>Evans v. Taco Bell Corp.</u>, No. 04-cv-103-JD, 2005 WL 2333841 at *8 (D.N.H. Sept. 23, 2005) ("Evans does not assert that her claimed emotional distress resulted from her inoculation, but rather from her ingestion of food which she later learned could have potentially been contaminated with Hepatitis A.  Because her alleged emotional distress did not follow from any physical injury, Evans's negligence claim suffers from the same fatal defect as those of the plaintiffs in <u>Palmer</u> and <u>Thorpe</u>: it seeks damages for emotional distress unaccompanied by either physical injury or physical symptoms.").

### Conclusion

The allegations set forth in count 73 of the Third Amended Complaint fall well short of plausibly asserting a factual basis for viable negligence, negligent infliction of emotional

distress, or intentional infliction of emotional distress claims by each of the 188 individual negative results claimants against either ARRT or Triage.  And, because count 74 is derivative of count 73, it also fails to state a viable cause of action against Triage for contractual indemnification of the sums Exeter Hospital paid in settlement to the negative results claimants.

ARRT's motion to dismiss count 73 of the Third Amended Complaint (document no. 78), as well as Triage's motion to dismiss counts 73 and 74 (document no. 79), are granted, without prejudice to Exeter Hospital's moving to amend those two counts to state viable grounds for recovery.

If it so chooses, and if counsel can do so in good faith (Rule 11, Federal Rules of Civil Procedure) Exeter Hospital may, within thirty (30) days of the date of this order, file an amended complaint that adequately and plausibly sets forth factual allegations sufficient to state a viable basis to recover against ARRT and/or Triage for settlements made to one or more of the 188 negative results claimants.  If Exeter Hospital avails itself of that opportunity, it must, as for each individual negative results claimant, allege the essential elements of a viable claim and a plausible basis upon which to

rest any award of damages, including that each such claimant suffered physical symptoms or physical manifestations of severe emotional distress that Exeter Hospital believes, in good faith, can be proven at trial.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 31, 2016

cc:   Robert C. Dewhirst, Esq.
      Elaine M. Michaud, Esq.
      Jonathan A. Lax, Esq.
      Joshua M. Wyatt, Esq.
      Peter W. Mosseau, Esq.
      Jay Surdukowski, Esq.
      Peter A. Meyer, Esq.
      James B. Lynch, Esq.
      Mark A. Darling, Esq.
      Shari L. J. Aberle, Esq.
      Daniella Massimilla, Esq.
      Linda M. Smith, Esq.
      Ralph Suozzo, Esq.
      William N. Smart, Esq.