UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Exeter Hospital, Inc.,
      Plaintiff

      v.                                  Case No. 14-cv-009-SM
                                          Opinion No. 2016 DNH 090
The American Registry of
Radiologic Technologists;
and Triage Staffing, Inc.,
      Defendants

**O R D E R**

By order dated October 31, 2016 (document no. 94), the court granted motions to dismiss filed by The American Registry of Radiologic Technologists ("ARRT") and Triage Staffing, and dismissed counts 73 and 74 of Exeter Hospital's Third Amended Complaint.

Count 73 sought statutory contribution from ARRT and Triage pursuant to N.H. Rev. Stat. Ann. ("RSA") 507:7. But, the court concluded that the complaint's factual allegations "fall well short of plausibly asserting a factual basis for viable negligence, negligent infliction of emotional distress, or intentional infliction of emotional distress claims by each of the 188 individual negative results claimants against either ARRT or Triage." Id. at 12-13. The court also found that,

because count 74 is derivative of count 73, "it too fails to state a viable cause of action against Triage for contractual indemnification of the sums Exeter Hospital paid in settlement to the negative results claimants." Id. at 13.

Nevertheless, the court afforded Exeter Hospital the opportunity to "file an amended complaint that adequately and plausibly sets forth factual allegations sufficient to state a viable basis to recover against ARRT and/or Triage for settlements made to one or more of the 188 negative results claimants." Id. Exeter Hospital has not availed itself of that opportunity. Instead, it moves the court to reconsider its dismissal of count 74, to vacate (in part) its order of October 31, and to reinstate its contractual indemnification claim against Triage. That motion is denied.

**Discussion**

In count 74 of the Third Amended Complaint, Exeter Hospital alleges that, pursuant to a staffing agreement between Triage and AHSA (an organization of which Exeter Hospital is a member), Triage is contractually obligated to defend and indemnify Exeter Hospital against the claims advanced by the negative results claimants. See Third Amended Complaint at paras. 973-77. See also AHSA Group Staffing Services Program Standard Agency

Staffing Agreement (document no. 66-1) at para. 7(c)(i). The "negative results claimants" are 188 people who were potentially exposed to the Hepatitis-C virus at Exeter Hospital, tested negative for the disease, but nevertheless threatened to bring some sort of negligence or emotional distress claims against the hospital. Importantly, however, "none of the patients who tested negative ever filed a lawsuit" against Exeter Hospital. Third Amended Complaint at para 951, n.2. Still, says Exeter Hospital, because it gave Triage notice of those potential claims and because it subsequently settled those potential claims for a "reasonable" amount, Triage is obligated to reimburse it for that sum, plus reasonable attorney's fees incurred in the process of effecting those settlements.

Exeter Hospital says that in dismissing its contractual indemnification claim for failure to state a viable cause of action, the court misapprehended "the legal distinction - in the context of contractual indemnity - between 'actual liability' and 'potential liability.'" Plaintiff's Motion to Reconsider (document no. 95) at 2. And, says the hospital, because it "plausibly alleged 'potential liability'" with respect to the negative results claimants, "Triage's contractual duties to defend and indemnify" were triggered. Id. But, as the court held in its prior order, Exeter Hospital did not plausibly

3

allege that it had any "potential liability" to the negative results claimants.

> Rather than alleging a plausible instance of at least possible exposure to Hepatitis-C for each of the negative results claimants, the amended complaint suggests that Exeter Hospital (laudably) tested those patients out of an abundance of caution and, ultimately, settled their claims despite the fact that there may have been no <u>legal</u> obligation to do so (or, at a minimum, without requiring those claimants to demonstrate that they had, indeed, suffered legally compensable emotional distress). Of course, independent of any legal obligation the hospital may have had to compensate the negative results claimants, one can imagine many reasons that might have motivated the hospital to settle those claims quickly and out of court.

Order Dated October 31, 2016 (document no. 94) at 9 (emphasis in original). <u>See also</u> <u>Id</u>. at 7-8 ("[T]he Third Amended Complaint fails to adequately allege that each of the 188 negative results claimants was adequately exposed to the Hepatitis-C virus to have a <u>reasonable</u> fear of developing the illness.") (emphasis in original).

Consequently, if, as Exeter Hospital claims, Triage's contractual duty to defend and indemnify is triggered upon the hospital's plausible allegation of "potential liability" to the negative results claimants, that condition was not met in this case. Exeter Hospital's Third Amended Complaint fails to plausibly allege that any of the negative results claimants had

a viable, legally cognizable, and trial-worthy claim against the hospital. In other words, the hospital had no "potential liability" to the negative results claimants because their claims were entirely without legal merit.[1]

Moreover, even if Exeter Hospital were correct in asserting that Triage's obligation to indemnify was triggered merely by the hospital's broad invocation of "potential liability" to the negative results claimants (regardless of how meritless or even frivolous those claims might have been), its argument still falters. According to the hospital, once it notified Triage of its "potential liability" to the negative results claimants, Triage became obligated to indemnify the hospital to the extent its subsequent settlement with those claimants was "reasonable." See Plaintiff's Motion to Reconsider at 4 ("In order for an indemnitee who has paid a settlement to recover from an indemnitor for breach of the duties triggered by 'potential liability,' an indemnitor must show: (1) the fact situation of the original claim is covered by the contract or indemnity, and

---

[1] Parenthetically, the court notes that Exeter Hospital's indemnification argument is made entirely in the abstract. That is, the hospital does not point to, or rely upon, any specific language in the indemnification agreement. Instead, it relies entirely on general principles of indemnification law in support of its claim that Triage is liable for the settlement sums the hospital paid to the negative results claimants.

5

(2) the settlement is reasonable.") (citation and internal punctuation omitted). And, says the hospital, assessing the "reasonableness" of that settlement is a factual question that involves consideration of just two factors: the likelihood that the negative results claimants would have prevailed at trial (and, if so, in what amount), balanced against the likelihood that Exeter Hospital would have prevailed at trial. Id. at 4 (citing Trim v. Clark Equipment Co., 274 N.W.2d 33, 36 (Mich. App. 1978)).[2]

In support of that position, Exeter Hospital also relies upon the court of appeals' opinion in Fashion House, Inc. v. K Mart Corp, 892 F.2d 1076 (1st Cir. 1989) (applying Michigan law and relying upon Clark Equipment). There the circuit noted:

> In this case, the indemnity clause is written in such broad, sweeping language as to make it highly probable that the parties never meant to make actual, as opposed to reasonably perceived, liability a prerequisite to indemnification. In addition, the record makes manifest that the putative indemnitor, FHI, had notice of the trademark owner's action against K mart, but declined to defend it. In such circumstances, the general rule in both New York and Michigan is that the indemnitor will be bound by any reasonable, good faith settlement the indemnitee might thereafter make. For our purposes, this means that an indemnitee, like K mart, may recover based on its

---

[2] The parties' indemnification agreement provides that the "laws of the State of Michigan apply to all transactions encompassed by this Agreement." AHSA Group Staffing Services Program Standard Agency Staffing Agreement, at para. 7(a).

> potential liability and need not demonstrate actual
> liability by proving the elements of the underlying
> claim against it. In fine, the indemnitee must show
> only that the fact situation of the original claim is
> covered by the contract of indemnity and that the
> settlement is reasonable.

Fashion House, 892 F.2d at 1094 (citations and internal punctuation omitted) (emphasis in original). Turning to the means by which the "reasonableness" of the indemnitee's settlement is measured, the court observed:

> The reasonableness of the settlement consists of <u>two components</u> which are interrelated. The fact finder must look at the amount paid in settlement of the claim in light of the risk of exposure. The risk of exposure is the <u>probable amount of a judgment</u> if the original plaintiff were to prevail at trial, <u>balanced against the possibility that the original defendant would have prevailed</u>. If the amount of the settlement is reasonable in light of the fact finder's analysis of these factors, the indemnitee will have cleared this hurdle.

Id. at 1094 (1st Cir. 1989) (quoting Clark Equipment Co., 274 N.W.2d at 36-37) (emphasis supplied).

So, even assuming Triage's contractual obligation to indemnify Exeter Hospital was triggered by the demands made by the negative results claimants, the question would arise as to whether the hospital's settlement with those claimants was "reasonable." That, says Exeter Hospital, is an issue that can only be resolved by a jury, applying the two-factor balancing

7

test described above. Consequently, the argument goes, the court erred in dismissing the hospital's indemnification claim. But, because the claims advanced by the negative results claimants (at least as described by the hospital in its Third Amended Complaint) were facially meritless, Exeter Hospital bore zero "risk of exposure" should the matter have proceeded to trial. In other words, the "possibility that the original defendant [Exeter Hospital] would have prevailed," Fashion House, 892 F.2d at 1094, was one hundred percent. So, based solely on the language from Fashion House and Clark Equipment upon which Exeter Hospital relies, one would be compelled to conclude that its settlement of the meritless claims advanced by the negative results claimants was not, as a matter of law, reasonable.[3]

Of course, the question unaddressed by either Fashion House or Clark Equipment is whether, when assessing the

---

[3] Approximately 25 years after issuing its decision in Trim v. Clark Equipment, the Michigan Court of Appeals explained and refined the holding in that case, noting that if the indemnitor can conclusively demonstrate that the underlying suit against its indemnitee "would have been successfully defended, [the indemnitee] may not recover on the indemnity claim." Grand Trunk Western RR v. Auto Warehousing Co., 686 N.W.2d 756, 765 (Mich. App. 2004). So it is in this case, since Triage has demonstrated that the underlying claims against Exeter Hospital (as described in the Third Amended Complaint) lacked any legal merit.

8

"reasonableness" of an indemnitee's settlement of claims, the finder of fact can take into account factors <u>other than</u> simply the likelihood that the claimants would have prevailed at trial - factors such as costs and attorney's fees the indemnitee would have incurred had it litigated even baseless claims; the reputational injury the indemnitee may have suffered had it not resolved those claims quickly and short of a full trial; or the monetary value the indemnitee ascribed to resolving the claims swiftly and without the uncertainty and administrative disruption associated with litigation or a trial on the merits. In other words, those courts did not address whether it might be permissible for a jury to consider whether, in light of a wide range of practical factors - some of which would be unique to each case - a "reasonable person" in the position of the indemnitee would have settled the claims, notwithstanding their lack of legal merit.

Instead, the courts in both <u>Fashion House</u> and <u>Clark Equipment</u> held that the relevant "reasonableness" inquiry is far more limited and mechanical (that is, focusing strictly on the probability that the claimants would have prevailed at trial and, if so, how much they likely would have recovered). Although Exeter Hospital seems to suggest that an evaluation of the reasonableness of its settlement should involve

consideration of many relevant factors (i.e., a "totality of the circumstances" inquiry), it has provided no helpful or authoritative precedent or argument to support that view.

Stated slightly differently, Exeter Hospital invokes the opinions in Fashion House and Clark Equipment to support its claim that Triage is legally obligated to indemnify it for money paid to settle legally baseless claims - claims that were settled either for "nuisance value," or for business reasons to which Exeter Hospital ascribed a monetary value unrelated to actual or potential legal liability. But, neither Fashion House nor Clark Equipment provides any support for that claim. And, despite now having had two opportunities to identify authoritative support for the proposition that costs or, at a minimum, attorney's fees expended to settle legally meritless claims are recoverable from Triage under the indemnification agreement, Exeter Hospital has failed to do so. While it is conceivable that viable arguments might support the hospital's position - the court offers no opinion on that issue - at this juncture any such arguments are deemed to have been forfeited. See generally Int'l Tape Co. v. Technicote, Inc., 2000 WL 33667076 at *3 (D.N.H. April 21, 2000) (discussing why courts should be reluctant to embrace legal arguments that have not been presented by the parties). See also Coons v. Industrial

Knife Co., 620 F.3d 38, 44 (1st Cir. 2010) ("We have frequently emphasized that judges are not obligated to do a party's work for him, searching sua sponte for issues that may be lurking in the penumbra of the motion papers. This is particularly true where, as here, the undeveloped argument raises complexities that defy an easy answer.") (citations omitted).

**Conclusion**

Exeter Hospital's continued reliance on the notion that it has adequately alleged a viable indemnity claim against Triage, because it has plausibly alleged "potential liability" to the negative results claimants, is unpersuasive. For the reasons discussed in the court's prior order, the hospital has <u>not</u> adequately alleged that it had any potential liability to those claimants, because their claims - at least as articulated in the hospital's Third Amended Complaint - are not viable, legally cognizable causes of action. Based upon the arguments advanced in its papers, Exeter Hospital has not demonstrated that Triage is contractually obligated to reimburse it for costs and/or fees incurred to settle those facially meritless claims.

For the foregoing reasons, the relief sought in Exeter Hospital's motion to reconsider (document no. 95) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 5, 2017

cc: Robert C. Dewhirst, Esq.
    Elaine M. Michaud, Esq.
    Jonathan A. Lax, Esq.
    Joshua M. Wyatt, Esq.
    Peter W. Mosseau, Esq.
    James B. Lynch, Esq.
    Mark A. Darling, Esq.
    Meghan L. DesLauriers, Esq.
    Daniella Massimilla, Esq.
    Linda M. Smith, Esq.
    William N. Smart, Esq.